IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| NICHOLAS JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 18 C 2045 |
| | ) |
| ILLINOIS DEPARTMENT OF CORRECTIONS, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Nicholas Jones has sued his employer, the Illinois Department of Corrections (IDOC), alleging violations of his rights under the Americans with Disabilities Act (ADA) and the Family Medical Leave Act (FMLA). IDOC has moved for summary judgment. For the reasons stated below, the Court grants IDOC's motion.

### Background

Jones has been working as a correctional officer at IDOC's Dixon Correctional Center since January 7, 2013. Jones is a veteran, and he testified that he has been diagnosed with post-traumatic stress disorder (PTSD). According to Jones, flare-ups of his PTSD cause anxiety, depression, paranoia, and brain hyperactivity.

IDOC's attendance policy requires employees to seek advance approval for absences, except in emergency situations.[1] To use sick time, an employee must fill out

---

[1] The undisputed facts describing IDOC's attendance policy in IDOC's Local Rule 56.1 Statement are based largely on the declaration of Kathy Newstrand, Human Resources

a Notice of Absence (NOA) slip, which is submitted to a supervisor. For unforeseen or unscheduled absences, the employee must call the prison and report his absence. An officer at the prison will fill in part of an NOA slip for the absence, reporting the absent employee's name, reason for absence, type of time requested, and date and time of the call. When the employee returns to work, he must obtain the NOA slip from his supervisor and fill in additional information, including the dates of absence and the type and amount of benefit time he requests. The employee must return the completed form to his supervisor within two days of his return. The supervisor approves or disapproves a request for sick leave upon receiving a completed NOA.

An "unauthorized absence" under IDOC's attendance policy is one for which time has not been approved. Progressive discipline for unauthorized absences begins with counseling for the first offense, an oral reprimand for the second offense, and written reprimands for the third and fourth offenses. Subsequent offenses are disciplined via suspensions, starting with a one-day suspension for the fifth offense and going up to a twenty-day suspension for the eleventh offense. If there is a twelfth offense, the employee is discharged.

IDOC employees can apply for approval to take leave protected under the FMLA by making a request to Kathy Newstrand, Human Resources Representative at the

---

Representative at the Dixon Correctional Center. In his response brief, Jones moved to strike Newstrand's declaration because it was not dated, as required under 28 U.S.C. § 1746. It is not improper for a court to consider an undated declaration where—as is the case with Newstrand's declaration—the date of signing can be approximated based on the content and filing date. *See Chi. Reg'l Council of Carpenters Pension Fund v. Longshore/Daly, Inc.*, No. 08 C 359, 2014 WL 716223, at *3 n.1 (N.D. Ill. Feb. 25, 2014); *EEOC v. World's Finest Chocolate, Inc.*, 701 F. Supp. 637, 639 (N.D. Ill. 1988). Regardless, IDOC subsequently submitted an amended declaration with a dated signature. The Court denies the motion to strike as moot.

Dixon Correctional Center. The FMLA entitles employees to twelve weeks of unpaid leave for serious health conditions. 29 U.S.C. § 2612(a)(1)(D). Once approved for FMLA leave, the employee receives an FMLA designation notice from IDOC.

From 2013 to 2016, Jones received a series of approvals for FMLA leave based on flare-ups of a serious medical condition and related medical appointments. His first FMLA designation notice authorized twelve weeks of leave between October 23, 2013 and October 25, 2014. The notice stated that the anticipated frequency of flare-ups was one to two times per week, with a duration of up to three days per event; the anticipated need for appointments was two times per week. The FMLA designation notice also stated that Jones was required to "notate on [his] absence slips which absences are related to the qualifying condition by including 'FMLA' on those slips." FMLA Designation Notice, Def.'s L.R. 56.1 Stmt., Ex. 22 (dkt. no. 58-22) at 2. IDOC approved Jones for FMLA leave again for the period between December 19, 2014 and December 18, 2015 and between December 19, 2015 and December 18, 2016. Each time IDOC approved Jones for FMLA leave, it sent him an FMLA designation notice, and each was nearly identical to the first one he received in 2013. The notices all listed the same anticipated frequency of absences for flare-ups and appointments and included the same instruction to annotate NOA slips with "FMLA" to request protected leave.

In May 2016, Jones was referred to IDOC's Employee Review Board (ERB) for a hearing regarding violations of IDOC's attendance policy. Specifically, he was referred for twenty unauthorized absences between January and April 2016. At the time of the referral, Jones had already been disciplined six times for unauthorized absences between October 2013 and August 2015. The ERB hearing officer reviewed Jones's

3

record of past violations, the referrals for the twenty absences in 2016, and medical documentation corresponding to those absences. The officer also consulted with HR representative Newstrand.

In a written report issued June 2016, the hearing officer found that some of the referrals were untimely and several others were for leave that was protected under the FMLA; he dismissed those. The officer concluded, however, that six of the twenty alleged absences were unauthorized. These six violations, when added to the six that Jones already had at the time of the hearing, totaled twelve violations. The hearing officer therefore recommended discharging Jones—the discipline for an employee's twelfth violation of IDOC's attendance policy. The prison's warden concurred with the hearing officer's findings and recommendations, as did IDOC's Acting Director. Thus, starting on July 16, 2016, Jones was placed on a thirty-day suspension pending discharge.

Jones subsequently filed a grievance with his union. IDOC entered into an agreement with the union reversing the suspension and allowing Jones to return to work as a correctional officer on December 1, 2016. Jones has been working continuously since that date.

In March 2018, Jones sued IDOC, alleging violations of the ADA and FMLA. His ADA claims allege disparate treatment (count 1) and failure to accommodate his disability (count 2). Jones's FMLA claims allege interference with his right to leave under the statute (count 3) and retaliation for requesting such leave (count 4).

## Discussion

IDOC has moved for summary judgment on all four counts of Jones's complaint.

4

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (quoting *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)). In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in his favor. *Scheidler v. Indiana*, 914 F.3d 535, 540 (7th Cir. 2019).

**A.     ADA claims**

The ADA prohibits an employer from "discriminat[ing] against a qualified individual on the basis of disability." *Scheidler*, 914 F.3d at 541 (quoting 42 U.S.C. § 12112(a)). Discrimination prohibited under the ADA "include[s] disparate treatment *and* failure to accommodate" a disability. *Id.* The Court will address the motion for summary judgment on Jones's disparate treatment claim first and his reasonable accommodation claim next.

**1.     Disparate treatment (count 1)**

An ADA disparate treatment claim has three elements: "(1) plaintiff was disabled; (2) plaintiff was qualified to perform essential functions with or without reasonable accommodation; and (3) [his] disability was the 'but for' cause of [the] adverse employment action." *Id.* IDOC argues that it is entitled to summary judgment because Jones has failed to provide sufficient evidence for a reasonable juror to find in his favor on the second and third elements.

5

### a. Qualified individual

"A 'qualified individual' with a disability is a person who, 'with or without reasonable accommodation, can perform the essential functions of the employment position.'" *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 479 (7th Cir. 2017) (quoting 42 U.S.C. § 12111(8)). "[T]he term 'reasonable accommodation' is expressly limited to those measures that will enable the employee to work." *Id.* Authorizing an employee for a brief period of leave—"say, a couple of days or even a couple of weeks"—to deal with a medical condition may be a reasonable accommodation for intermittent conditions. *Id.* at 481. Thus, an employee may be a qualified individual under the ADA, even if he needs to take intermittent leave for a medical condition. *Id.* For example, "[s]omeone with arthritis or lupus may be able to do a given job even if, for brief periods, the inflammation is so painful that the person must stay home." *Id.* Employers are not required, however, to accommodate "erratic or unreliable attendance," even if it is caused by an employee's disability. *Taylor-Novotny v. Health All. Med. Plans, Inc.*, 772 F.3d 478, 489-90 (7th Cir. 2014) (quoting *Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013)).

IDOC argues that the twelve unauthorized absences that led to Jones's suspension amount to "erratic or unreliable attendance" that it need not accommodate, *see id.*, and thus no reasonable juror could conclude that Jones was a qualified individual under the ADA. Jones argues that he was unable to work on those dates for medical reasons and that authorizing those absences would have been a reasonable accommodation by IDOC, thus making him a qualified individual. For five of the six absences in 2016 that the ERB hearing officer concluded were unauthorized, Jones has

6

submitted notes from doctors in the U.S. Department of Veteran's Affairs (VA) stating that he was unable work on those dates for medical reasons. Specifically, a letter from Dr. Ishvar Pattanshetti accounted for Jones's absences on January 20, 2016 and February 18, 22, and 29, 2016. A letter from Dr. Naomi Bloom accounted for his absences on February 29, 2016 and March 2, 2016. Based on this evidence, a reasonable juror could conclude that allowing Jones these five days of leave to address his medical condition would have been a reasonable accommodation. *See Severson*, 872 F.3d at 481. And a juror could reasonably find that with this accommodation, Jones was a qualified individual under the ADA.

        **b.**    **Causation**

An employee can establish that a disability was the "but for" cause of an adverse employment action—here, suspension—with either direct or indirect proof. *See Monroe v. Indiana Dep't of Transp.*, 871 F.3d 495, 504 (7th Cir. 2017). Under the direct method, the employee may present direct or circumstantial evidence that the employer had a discriminatory motivation. *Kuttner v. Zaruba*, 819 F.3d 970, 976 (7th Cir. 2016). Under the indirect method, a burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), the employee has the initial burden of showing: (1) he is a member of a protected class; (2) he met his employer's legitimate job expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside of the protected class received more favorable treatment. *Kuttner*, 819 F.3d at 976. The Seventh Circuit has recently shifted away from multi-factor tests in employment discrimination cases, favoring instead an approach in which a court considers the evidence as a whole to determine "whether the evidence would

7

permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge." *See Monroe*, 871 F.3d at 504 (quoting *Ortiz v. Werner Enter., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)).

IDOC argues that Jones has failed to provide sufficient evidence to support a finding, under either the direct or indirect method, that a disability was the "but for" cause of his suspension. First, as to the direct method, IDOC argues that Jones points to no evidence that IDOC had a discriminatory motivation; it contends Jones's violation of IDOC's attendance policy was the reason he was suspended. In his response brief, Jones cites nothing by way of evidence of a discriminatory motivation that would support his claim via the direct method.

As for the indirect method, IDOC argues that there is insufficient evidence to permit a reasonable factfinder to conclude that Jones was meeting IDOC's legitimate job expectations or that similarly situated employees received more favorable treatment. Jones contends that he was meeting legitimate job expectations by pointing to several of his performance reviews, which indicated that he met IDOC's expectations for use of time, a performance category that includes absenteeism. But Jones did not point to any evidence that would give rise to a genuine dispute on whether similarly situated employees received more favorable treatment.

Thus, regardless of the method of proof—direct or indirect—Jones has failed to identify evidence that would permit a reasonable factfinder to conclude that IDOC suspended him because of a disability. *See Monroe*, 871 F.3d at 504. The Court grants IDOC's motion for summary judgment on this claim.

8

### 2. Failure to accommodate (count 2)

Jones has alleged that IDOC failed to offer the reasonable accommodation of permitting him intermittent absences for VA medical appointments. A claim for failure to accommodate under the ADA has three elements: "(1) plaintiff was a qualified individual with a disability; (2) defendant was aware of his disability; and (3) defendant failed to accommodate his disability reasonably." *Scheidler*, 914 F.3d at 541. "Reasonable accommodation under the ADA is a process, not a one-off event." *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1178 (7th Cir. 2013), *overruled on other grounds*, *Ortiz*, 834 F.3d at 765. Both the employer and employee are responsible for engaging in an interactive process to determine the necessary accommodation. *Brown v. Milwaukee Bd. of Sch. Dirs.*, 855 F.3d 818, 821 (7th Cir. 2017). But unless there are "special circumstances, like a severe cognitive disability or mental illness," the reasonable accommodation process begins with the employee, who has the "initial duty" to "indicate to the employer that [he] has a disability *and* desires an accommodation." *Cloe*, 712 F.3d at 1178 (quoting *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 803 (7th Cir. 2005)) (emphasis added). Thus, "a plaintiff typically must *request* an accommodation for his disability in order to claim that he was improperly *denied* an accommodation under the ADA." *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 813 (7th Cir. 2015).

IDOC first argues that it is entitled to summary judgment on this claim because Jones did not provide sufficient evidence for a reasonable factfinder to conclude that he is a qualified individual under the ADA. For the reasons already discussed, this is a genuinely disputed issue.

Second, IDOC argues that there is no evidence that would permit a reasonable factfinder to conclude that Jones requested an accommodation for intermittent leave to attend VA appointments. Jones does not dispute that there is no evidence of any such request. He argues instead that because he submitted NOA slips requesting authorization for absences to attend VA appointments, along with documentation from the VA indicating his arrival and departure times from those appointments, IDOC was aware that he had a disability. This awareness, Jones contends, is sufficient to trigger IDOC's liability for failure to accommodate. It is not.

Again, absent "special circumstances" such as severe cognitive disability, a plaintiff must show that he satisfied his "initial duty" to "indicate" to his employer that he both had a disability and desired accommodation. *Cloe*, 712 F.3d at 1178. The Seventh Circuit has "'consistently held that disabled employees must make their employers aware of any nonobvious, medically necessary accommodations with corroborating evidence such as a doctor's note or at least orally relaying a statement from a doctor,' before an employer is required to provide an accommodation." *Id.* (quoting *Ekstrand v. Sch. Dist. of Somerset*, 583 F.3d 972, 976 (7th Cir. 2009)); *see also Wells v. Winnebago County*, 820 F.3d 864, 867 (7th Cir. 2016).

Jones has not provided any evidence that he made a request to IDOC for an accommodation permitting intermittent leave for VA appointments, nor has he offered any evidence tending to corroborate that he required such an accommodation. *See Cloe*, 712 F.3d at 1178. His periodic requests for time off for VA appointments and documentation of arrival and departure times from those are not sufficient evidence to permit a reasonable juror to conclude that he requested the accommodation of

10

intermittent leave from IDOC. Faced with analogous facts, the Seventh Circuit affirmed summary judgment on a failure-to-accommodate claim, ruling that an employee's periodic requests for leave to deal with health complications of his diabetes were not sufficient evidence to support a reasonable finding that he had requested the accommodation of intermittent medical leave. *See Preddie*, 799 F.3d at 813; *Preddie v. Bartholomew Cty. Consol. Sch. Corp.*, 44 F. Supp. 3d 800, 809 (S.D. Ind. 2014). Jones does not point to any other evidence of a request for accommodation, nor does he argue that any special circumstances exist that would alleviate his duty to make a request. *See Cloe*, 712 F.3d at 1178.

The Court grants IDOC's motion for summary judgment on this claim.

**B.    FMLA claims**

**1.    Interference (count 3)**

Jones claims that IDOC interfered with his FMLA rights because the ERB hearing officer denied his request for FMLA protection for five absences between January and April 2016—five of the six absences that led to his suspension—despite his doctors' notes that he was unable to work on those days due to a medical condition.

The FMLA requires employers to provide employees with twelve weeks of unpaid leave for serious health conditions, and employers are prohibited from interfering with this right. *Lutes v. United Trailers, Inc.*, 950 F.3d 359, 364 (7th Cir. 2020) (citing 29 U.S.C. § 2612(a)(1)(D)). To prevail on an FMLA interference claim, a plaintiff must establish "(1) he was eligible for the FMLA, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled." *Id.* at

11

365.

IDOC argues that there is not sufficient evidence to allow a reasonable juror to find for Jones on the fourth element of the interference claim: notice. An employee's notice must "provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." *Id.* at 364 (citing 29 C.F.R. §§ 825.303(b), 825.301(b)). An employee need not expressly invoke the FMLA to give his employer notice, and the employee's obligation is satisfied if he provides information sufficient to show he likely has a serious health condition. *Id.* at 364, 366. Additionally, the employee must comply with his employer's notice and procedural requirements for requesting FMLA leave. *Id.* at 365. If he fails to do so, the employer may deny FMLA protection for an absence. *Id.*; *see also Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 825 (7th Cir. 2012).

The FMLA designation notices that Jones received stated that to request FMLA leave, he had to annotate his NOA slips with "FMLA." Jones does not dispute that he failed to write "FMLA" on the NOA slips for the five absences in 2016 for which he had notes from Dr. Pattanshetti and Dr. Bloom stating he was unable to work for a medical reason. He argues, however, that he met his notice obligation by requesting sick leave on his NOA slips and providing supporting medical documentation, the doctors' notes. This, in Jones's view, triggered IDOC's duty to request additional information to determine if his leave qualified for FMLA protection.

To trigger an employer's duty to investigate the applicability of the FMLA to an absence, an employee must first satisfy his duty of providing the employer information sufficient to establish "probable cause . . . to believe that the employee is entitled to

12

FMLA leave." *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 220 (7th Cir. 2015). Merely requesting sick leave, or even repeatedly calling in sick, is insufficient to satisfy this notice obligation; the employee must communicate that he has a condition sufficiently serious to qualify for FMLA protection. *Lutes*, 950 F.3d at 366; *Stevenson v. Hyre Elec. Co.*, 505 F.3d 720, 725 (7th Cir. 2007). For example, the Seventh Circuit has held that providing a doctor's note that an employee's wife suffered complications during labor, without additional details, would have triggered the employer's duty to investigate whether the employee qualified for FMLA protection. *Lutes*, 950 F.3d at 366 (explaining *Aubuchon v. Knauf Fiberglass GmbH*, 359 F.3d 950, 953 (7th Cir. 2004)). Reporting a "twisted knee," on the other hand, is not sufficient to alert an employer than an employee may be entitled to FMLA leave. *Lutes*, 950 F.3d at 366.

No reasonable juror could conclude, based on Jones's NOA slips requesting sick leave and the corresponding doctors' notes, that he alerted IDOC to the seriousness of his health condition. Merely requesting sick leave on his NOA slips did not alert IDOC that he was suffering from an FMLA-qualifying condition. And the notes from Dr. Pattanshetti and Dr. Brown stated only that Jones was unable to work for a medical reason. Neither letter offered any information about the nature or seriousness of Jones's condition.

Because there is no evidence that would allow a reasonable jury to conclude that Jones gave IDOC notice that his absences might qualify for FMLA protection, the Court grants IDOC's motion for summary judgement on his FMLA interference claim.

### 2. Retaliation (count 4)

Jones claims that IDOC retaliated against him by suspending him for requesting

and using FMLA-protected leave between January and April 2016. An FMLA retaliation claim has the following elements: (1) the employee was engaged in a protected activity; (2) the employer took an adverse employment action against him; and (3) there was a connection between his protected activity and the adverse employment action. *Lutes*, 950 F.3d at 363. IDOC argues that there is insufficient evidence for a reasonable juror to find for Jones on the causation element of this claim.

Starting with Jones's claim that IDOC suspended him for requesting FMLA leave, IDOC correctly points out that Jones has failed to provide any evidence connecting his suspension to his requests for FMLA protection for the absences between January and April 2016. "An employee who alleges that her employer retaliated against her for exercising her rights under the FMLA can proceed under the direct or indirect methods of proof familiar from employment discrimination litigation." *Scruggs v. Carrier Corp.*, 688 F.3d 821, 826 (7th Cir. 2012) (quoting *Smith v. Hope Sch.*, 560 F.3d 694, 702 (7th Cir. 2009)). The direct and indirect methods of proof are explained earlier in this opinion. Jones does not cite any evidence, under either method, to connect his suspension to his requests for FMLA protection for his absences in 2016.

Jones's claim that he was suspended for using FMLA-protected leave likewise cannot survive summary judgment. To survive summary judgment on this claim, Jones must point to evidence that IDOC suspended him "because he took *valid* leave." *Preddie*, 799 F.3d at 819 (quoting *Lucas v. PyraMax Bank, FSB*, 539 F.3d 661, 667 (7th Cir.2008)) (emphasis added). Thus, Jones's FMLA retaliation claim based on his taking protected leave "stands or falls with his interference claim." *Hansen v. Fincantieri Marine Grp., LLC*, 763 F.3d 832, 835 (7th Cir. 2014); *see also Nicholson*, 690 F.3d at

828. As discussed above, Jones did not provide sufficient evidence for a reasonable jury to conclude that he had given IDOC notice that the five absences in 2016 that he claims were FMLA-protected were for a serious health condition. Thus, his FMLA retaliation claim likewise fails. *Cf. Preddie*, 799 F.3d at 819 (holding that plaintiff had a triable FMLA retaliation claim where evidence supported a reasonable inference that he was fired for absenteeism and his employer had notice that those absences were attributable to his son's sickle cell anemia); *Burnett v. LFW Inc.*, 472 F.3d 471, 482 (7th Cir. 2006) (reversing summary judgment on FMLA retaliation claim where evidence was sufficient to support a finding that plaintiff had given his employer sufficient notice of a serious medical condition and was terminated for taking leave for that condition).

The Court therefore grants summary judgment on Jones's FMLA retaliation claim.

## Conclusion

For the foregoing reasons, the Court grants IDOC's motion for summary judgment on all of the claims in Jones's complaint [dkt. no. 54] and directs the Clerk to enter judgment in favor of defendant and against plaintiff. Additionally, the Court directs the Clerk to place under seal Exhibit C to Plaintiff's Local Rule 56.1 Statement [dkt. no. 66-4], as this document contains personal identifying information.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: June 8, 2020